UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ST. JOSEPH MEDICAL CLINIC AMC | CIVIL ACTION |
| VERSUS | NO. 22-4521 |
| BANKERS INSURANCE COMPANY | SECTION: "P" (3) |

**ORDER AND REASONS**

Defendant, Bankers Insurance Company ("Bankers Insurance"), moves to vacate the Panel Appraisal Award Amendment & Clarification ("Amended Award") based on three alleged "significant errors" or "clear mistakes of fact."[1] Plaintiff, St. Joseph Medical Clinic AMC, filed an opposition, and Bankers Insurance replied. For the reasons below, the motion is denied.

**I.    Background**

This case concerns an insurance coverage dispute arising from damages sustained during Hurricane Ida. At the parties' request, an appraisal panel provided an award in September 2022 (the "Initial Award"). The Initial Award provided for $1,066,798.39 (RCV) under the policy's Building coverage and $12,729.86 under the policy's Business Property coverage.[2] The panel did not address other coverages, including business income loss and extra expense. Correspondence between the parties from October 2022 indicates that Bankers Insurance disagreed with the Initial Award's inclusion of a $61,485.00 expense for "Rose Office Systems, Inc."

---

[1] Doc. 72.
[2] Doc. 72-6.

1

("Rose Systems") within the Building coverage. Bankers Insurance took the position in its correspondence that the Rose Systems expense should be categorized within the Extra Expense coverage. But Bankers Insurance chose not to pursue this objection. Instead, it filed an unconditional motion to confirm in May 2023.

The briefing in connection with the motion to confirm raised the question of whether the panel may have included the Rose Systems expense within the Building coverage while perhaps also intending to include it within the Extra Expense coverage later. Another Division of this Court, the Honorable Donna Currault presiding, denied the motion. The Court identified the possibility of double counting as a potential significant error that required clarification by the panel. The matter was remanded for that clarification. The Court identified no other errors in the award.

The panel issued an Amended Award in January 2024. The Amended Award explained that the panel had included the Rose Systems expense within the Building coverage and provided its reasoning for doing so. The Amended Award further provided a complete calculation of damages for all the other coverages, including Extra Expense coverage ($0.00 awarded) and Business Income Loss ($270,409.96 awarded).[3] The Amended Award confirms there was no double-counting.

Presumably, the Amended Award provided Bankers Insurance with the assurance it needed such that Bankers Insurance would proceed with confirming the award, subject to any objections based on the new determinations for the other

---

[3] Doc. 75-1 at 2.

coverages. Instead, Bankers Insurance waited until May 2024 to move to vacate based on the same alleged Rose Systems error of which it was aware when it filed its prior motion to confirm in October 2022.

## II.     Analysis

### A.  Standard of Law

As explained in connection with Bankers Insurance's motion to confirm the Initial Award:

> Appraisal clauses are enforceable under Louisiana law.[5] They do not, however, deprive a court of jurisdiction over the matter. Like insurance policies as a whole, appraisal provisions are strictly construed. An appraisal award issued under an insurance policy is binding only if the appraisers have performed the duties required of them by the policy, which is the law between the contracting parties. The burden of demonstrating that the award should not be confirmed must fall upon the party challenging it. .
>
> Contractually specified appraisal awards are presumed accurate. Although appraisal awards are presumed correct, a court is not bound to confirm an award that contains clear mistakes of fact. When an award reflects accidental double-counting that duplicates certain items or categories, that is the type of clear error that cannot stand.

*St. Joseph Med. Clinic AMC v. Bankers Ins.,* No. CV 22-4521, 2023 WL 4485084, at *2–3 (E.D. La. June 7, 2023) (citations and quotation omitted). Courts "should not disrupt an appraisal award simply because reasonable minds could differ as to the amount awarded or the methods employed." *St. Charles Par. Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, 681 F. Supp. 2d 748, 760 (E.D. La. 2010).

3

**B. Bankers Insurance's belated objection to the panel's treatment of the Rose Systems expense is subject to judicial estoppel and lacks merit.**

Bankers Insurance argues first in its brief that the Amended Award erred in listing "Business Income Loss" and "Extra Expense" as separate coverages with two separate $227,271 limits. Bakers' Insurance maintains that these two categories constitute a singular coverage with a total policy limit of $277,271. At first glance, this argument appears not to implicate any of the award. The panel's Amended Award includes $270,409.96 in Business Income Loss but finds no loss relative to Extra Expense.[4] Thus, whether treated as one coverage or two, the amount payable would remain the same.

The reason for Bankers Insurance's focus on the first argument, however, becomes clear when read in tandem with the second argument. The second argument urges that the Rose Systems expense should not have been included under Building coverage—i.e., the same stance Bankers Insurance expressed in correspondence in 2022. Instead, Bankers Insurance maintains, the Rose Systems expense falls within the allegedly singular Business Income Loss/Extra Expense category. If Bankers Insurance were to prevail on its first argument *and* its second argument, the Rose Systems expense would be subject to a lower policy limit.

Bankers Insurance's first two arguments collapse under the weight of its prior litigation strategy. Bankers Insurance moved to confirm the Initial Award, which concluded that the Rose Office Systems expense fell within the Building coverage. Although Bankers Insurance (privately) did not agree with this categorization,

---

[4] Doc. 75-1 at 2.

4

Bankers Insurance made a strategy decision to abandon this objection when moving to confirm the Initial Award.[5] Bankers Insurance's reply brief in the earlier litigation discussed Rose Systems solely in arguing that this expense should not be double counted within both the Building coverage and the Extra Expense coverage.[6]

The purpose of the Court's clarification order was to ensure that the panel did not double-count the Rose Systems expense (or any others).[7] The Amended Award provides that clarification. The Amended Award reiterates that the Rose Systems expense falls within the Building coverage and clarifies that no duplicative amount for Rose Systems is assessed under Extra Expense coverage. The Amended Award does not, however, open the door for Bankers Insurance to revisit its strategy decision[8] relative to the Rose Systems expense.

Plaintiff correctly attacks Bankers Insurance's shifting approach on procedural grounds. Nothing in the Court's remand order contemplates that the parties will be permitted to raise new arguments based on old facts of which they were already aware at the time of the prior motions practice. Thus, Plaintiff maintains, Bankers Insurance's shift in position is akin to a motion for reconsideration of the Court's remand judgment. The undersigned agrees that

---

[5] *See* Rec. Doc. 13-5 at 1 (correspondence noting that the $1,066,798.39 Building RCV award included $61,485.00 relative to Rose Systems, which, Bankers System contended to Plaintiff, should have been categorized as Extra Expenses).
[6] Doc. 20.
[7] *See* Doc. 21 at 6.
[8] *See, e.g.*, Doc. 20 at 1-2 (requesting that the Court credit the Defendant for its payment on the Rose Systems expense and "*confirm the full appraisal award*," notwithstanding Defendant's belief that the Initial Award improperly categorized the Rose Systems expense).

5

Bankers Insurance has not presented any argument that would support revisiting the prior Order and Reasons.[9]

More to the point, however, Bankers Insurance's prior litigation conduct subjects it to judicial estoppel. Courts can invoke judicial estoppel "to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012). Because this doctrine is aimed to protect the "integrity of the judicial process, rather than the litigants, detrimental reliance" by an adverse party is not necessary." *Id.* (quotation and emphasis omitted). Judicial estoppel is appropriate when: (1) a party asserts a position that is "plainly inconsistent with a prior position;"(2) a court accepted that prior position; and (3) the party did not act inadvertently." *See id.* (quotation omitted). Federal law applies to this determination because "a federal court should have the ability to protect itself from manipulation" regardless of whether state law applies. *See Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 935 (5th Cir. 2003).

The first judicial estoppel factor is met because Bankers Insurance's current position is at dead odds with its motion to confirm the Initial Award. In its first motion, Bankers Insurance endorsed the Initial Award as correctly decided under the policy, arguing:

---

[9] This conclusion applies to Bankers Insurance's first two arguments, which it either raised or could have raised before. It does not apply, however, to Bankers Insurance's third argument relative to business income calculations. Given that there was no business income calculation in the Initial Appraisal, there was no ruling on that issue in the prior proceeding.

6

> Bankers Motion to Confirm Appraisal Award should be granted because the amount of damages has been properly determined by the appraisal process set forth in the subject insurance Policy and La. R.S. 22:13.11… Bankers [motion]] should be granted by this Honorable Court, and plaintiff's damages under the Policy should be set at the amount contained in the properly executed appraisal award.[10]

That motion emphasized that the Initial Award was decided correctly under both the statutory framework and "the Policy's provisions."[11] Thus, Bankers Insurance asked the Court to rule that the Initial Award "set the total amount of damages in this matter," including relative to an award of $1,046,255.76 under building coverage.[12] Now, Bankers Insurance asks the Court to vacate the Initial Award because, it contends, the Initial Award's Building coverage determination was error.[13] The two positions are irreconcilable.

The second judicial estoppel factor is met because the Court accepted Bankers Insurance's initial position. While acknowledging that Bankers Insurance' payment history demonstrated that it believed the Initial Award contained certain improper expenses, the Court's opinion confirms that it understood Bankers was asking though that the "award set the amounts owed at $1,066,798.39 for the building . . . ."[14] According to the prior opinion, Bankers Insurance believed it was "clear that the appraiser included $274,866.00 pack in/pack out costs in the building coverage award"[15] and also understood that the building coverage award included the $61,485

---

[10] Doc. 13 at 5.
[11] Doc. 13 at 7.
[12] Doc. 13 at 4, 11.
[13] Doc. 72 at 1.
[14] Doc. 21 at 2.
[15] *Id.* at 3.

7

Rose Systems.[16] Thus, it was accepted that Bankers Insurance's motion sought confirmation of the full amount of the Initial Award without qualification—i.e., without recategorizing expenses or lowering the amount of the Building Coverage award—provided there was no double-counting.

The third judicial estoppel factor is met because Bankers Insurance's abrupt shift in position is not the product of inadvertence. The record confirms that Bankers Insurance advised Plaintiff in October 2022 of the argument that the Initial Award miscategorized Rose Systems as part of the Building Coverage award.[17] Yet rather than pursue this objection, Bankers Insurance chose to file an unconditional motion to confirm the award in May 2023. Bankers Insurance's pivot in position reflects a fully informed strategy decision rather than any inadvertence. After a close review of the record, including the briefing on Bankers Insurance's prior motion, the resulting Order and Reasons, and the briefing on the present motion, the undersigned finds compelling reasons to apply judicial estoppel and preclude Bankers Insurance from belatedly challenging the inclusion of the Rose Systems expense in the Building coverage. Finally, and in the alternative, the undersigned finds that the panel's thorough explanation of its treatment of the Rose Systems expense under the policy[18] does not present any error warranting vacatur of the award.

---

[16] *Id.* at 3.
[17] Doc. 13-5 at 1.
[18] Doc. 75 at 2-3.

**C. Bankers Insurance's argument relative to Lost Business Income misstates the panel's position and lacks merit.**

According to Bankers Insurance, the panel also erred by using "gross income" to calculate lost business income. Bankers Insurance maintains that this violates the policy calculation method, which defines "Business Income" as Net Income (i.e., Net Profit or Loss) plus "[c]ontinuing normal operating expenses incurred, including payroll."[19] If the panel had used gross *income*, as Bankers 'Insurance suggests, the panel's method may have been unclear. But the panel never used that term. Instead, the panel's email explanation repeatedly referred to gross *profit*—a different accounting term.[20] Further, Bankers Insurance's argument on this point does not refer to any actual calculation error—merely an alleged error in terminology—and the mischaracterization of the panel's reasoning renders this argument confusing, at best. Thus, Bankers Insurance has identified no actionable error in the panel's decision.[21] *See also St. Charles Par. Hosp.,* 681 F. Supp. at 762 ("To the extent that

---

[19] Rec. Doc 72-1.

[20] "Net profits are what remains in the conduct of a business after deducting from its total receipts all of the expenses incurred in carrying on the business. Contrast gross profits, the "[t]otal sales revenue less the cost of the goods sold, no adjustment being made for additional expenses and taxes." *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 779 (5th Cir. 2017) (quoting *Gross Profit*, *Black's Law Dictionary* (10th ed. 2014)) (first quotation omitted).

[21] Although Bankers Insurance does not provide any analysis or argument, it quotes from an endorsement that provides that Net Income should not account for any favorable increase in business caused by the underlying occurrence. Doc. 72-1 at 11. This is not sufficient to raise the argument, which has been waived. Nonetheless, there is no indication that the panel relied on a potential favorable increase in business conditions. To the contrary, the record suggests the panel expressly declined to adopt such an approach. Doc. 75-2 at 1-2.

defendant makes additional arguments about errors in the calculation of business income, the Court is at a loss to understand what they are.").

**III. Conclusion**

Bankers Insurance first sought to prevail by arguing that the Initial Appraisal got it right. The only issue left to remand was whether the panel may be double counting. The Amended Appraisal confirms there was no such error. Now, Bankers Insurance seeks to prevail by arguing that the Initial Appraisal suffered from a separate significant error, which has carried over into the Amended Appraisal and requires its vacatur. This attempt to "prevail, twice, on opposite theories," renders Bankers Insurance the "quintessential 'chameleonic litigant' against whom judicial estoppel is usually appropriate." *See Hibernia Nat'l Bank v. Carner*, 32 F.3d 565, *2 (5th Cir. 1994); *StemCor USA, Inc. v. Am. Met. Trading, LLP*, 489 F. Supp. 3d 511 (E.D. La. 2020) (quoting *id*.). Moreover, Bankers Insurance's confusing argument as to Lost Business Income does not identify any error warranting vacatur. Finally, although Plaintiff has requested in briefing that the Amended Award be confirmed, the Court will not do so until presented with an appropriate motion. *See Cole v. Garrison Prop. & Cas. Ins.,* No. 3:22-CV-00318, 2023 WL 7092491, at *6 (M.D. La. Oct. 26, 2023).

For these reasons,

**IT IS ORDERED** that the Motion to Vacate (Doc. 72) is **DENIED.**

New Orleans, Louisiana, this 17th day of June, 2024

                                           **EVA J. DOSSIER**
                              **UNITED STATES MAGISTRATE JUDGE**